**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TQM FOOD SERVICES, INC., a California corporation,<br><br>                                    Plaintiff,<br><br>v.<br><br>FREEDOM MARKET, INC., a California corporation doing business as Somos Tacos & Atomic Wings; SALEM SOMO, an individual; and FEDDWON SOMO, an individual,<br><br>                                    Defendants. | Case No.: 3:15-cv-1600-H-DHB<br><br>**ORDER GRANTING MOTION TO MODIFY TEMPORARY RESTRAINING ORDER**<br><br>[Doc. No. 10] |

On July 20, 2015, Plaintiff TQM Food Services, Inc. ("Plaintiff") filed a complaint against Defendants Freedom Market, Inc., Salem Somo, and Feddwon Somo (collectively, "Defendants") alleging violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(5). (Doc. No. 1.) Also on July 20, 2015, Plaintiff filed a motion for a temporary restraining order. (Doc. No. 2.) On July 24, 2015, the Court granted Plaintiff's motion for a temporary restraining order. (Doc. No. 6.) On July 27,

2015, the parties notified the Court that the case settled and jointly moved to amend the temporary restraining order so as to remove restrictions on Defendants' bank accounts as long as Defendants complied with the terms of the settlement agreement. (Doc. No. 8.) On July 28, 2015, the Court granted the joint motion and amended the temporary restraining order. (Doc. No. 9.) With the consent of the parties and pursuant to Federal Rule of Civil Procedure 65(b)(2), the Court extended the temporary restraining order to remain in effect until the parties notified the Court that Defendants had paid Plaintiff $7,500 in accordance with the settlement agreement. (Doc. No. 9 at 2.)

On October 23, 2015, Plaintiff filed a noticed motion to amend the temporary restraining order to reinstate the restrictions on Defendants' bank accounts. (Doc. No. 10 at 1.) Plaintiff seeks to direct to Plaintiff payment of Defendants' rental income. (Id.) Plaintiff also requests attorney's fees. (Id.) Defendants did not oppose the motion. On November 23, 2015, the Court held a hearing on the motion. Mitch Wallis appeared for Plaintiff, and Defendant Salem Somo appeared pro se. For the reasons that follow, the Court grants Plaintiff's motion.

## Background

Plaintiff is a company that is licensed as a dealer under PACA and that sells wholesale quantities of perishable agricultural commodities. (Doc. No. 10-1, Battaglia Decl., ¶ 3.) Defendants Salem and Feddwon Somo are shareholders, officers, and directors of Freedom Market, Inc. (Id. ¶ 4.) Plaintiff delivered $5,005.04 worth of perishable agricultural commodities to Defendants between December 3, 2014, and December 8, 2014. (Id. ¶ 6.) Plaintiff sent invoices containing the language required by 7 U.S.C. § 499e(c)(4) to Defendants. (Id. ¶ 8.)

On July 24, 2015, the Court issued a temporary restraining order that froze Defendants' bank accounts. (Doc. No. 6 at 6.) On July 27, 2015, the parties filed a settlement agreement signed by Plaintiff, Defendant Feddwon Somo in his individual capacity, and Defendant Salem Somo both in his individual capacity an on behalf of Defendant Freedom Market. (Doc. No. 8-1). The settlement agreement required

1  Defendants to pay $7,500 to Plaintiff with $1,000 due within several days of the settlement
2  agreement's signing and the remainder payable in monthly installments that would
3  conclude on February 1, 2016.  (Id. at 2.)  At the request of the parties, the Court extended
4  the temporary restraining order to remain in effect until the settlement consideration was
5  fully paid and removed the freeze on Defendants' bank accounts with the caveat that it
6  could reinstate the freeze if Defendants did not comply with the terms of the settlement
7  agreement.  (Doc. No. 8; Doc. No. 8-1 at 6; Doc. No. 9 at 2.)

At the time the parties negotiated the settlement agreement, Defendant Salem Somo provided to Plaintiff several pre-dated checks payable to Plaintiff and requested that Plaintiff deposit one check on the first day of each month beginning in September 2015 until the debt was fully paid.  (Doc. No. 10-1, Battaglia Decl., ¶¶ 13-14.)  When Plaintiff deposited the first monthly installment settlement check on September 1, 2015, the check was returned with a stamp indicating the account had been closed.  (Id. ¶ 16.)  Defendants have closed their business, but they retain ownership of the real property where they formerly conducted their business and incurred the PACA debt that is the subject of this litigation.  (Doc. No. 10-3, Wallis Decl., ¶ 17.)  David Ruiz, a third party, is renting the premises of Defendants' business from Defendants for approximately $7,000 per month.  (Id.; Doc. 10-2, Mouet Decl., ¶ 19.)

At the November 23, 2015, hearing, Defendant Salem Somo gave money orders for $2,000 to Plaintiff's counsel.  The parties conferred and agreed to a revised payment schedule as indicated by their initials on a draft version of a modified temporary restraining order.  (Doc. No. 13.)

**Discussion**

I.   Motion to Modify Temporary Restraining Order

The standard for a temporary restraining order is "substantially identical" to the standard for granting a preliminary injunction.  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such

relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); accord Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010).  A party seeking preliminary relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20.  In the Ninth Circuit, the court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

Federal Rule of Civil Procedure 65(b)(2) states that a temporary restraining order "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."  The parties consented to maintaining the temporary restraining order until Defendants had fully paid the settlement consideration, and the Court extended the temporary restraining order for that period.  (Doc. No. 8; Doc. No. 8-1 at 6; Doc. No. 9 at 2.)  Thus, the temporary restraining order remains in effect.

The Court stated in its order modifying the temporary restraining order that its decision to lift the freeze on Defendants' bank accounts was contingent on Defendants' complying with the terms of the settlement agreement.  (Doc. No. 9 at 2.)  Plaintiff has demonstrated that Defendants have not complied with the settlement agreement because Defendants have not paid the installments due under the settlement and have instead closed their checking account.  (Doc. No. 10-1 ¶¶ 16-19.)  The Court concludes that the Winter factors continue to favor the maintenance of the temporary restraining order the Court issued on July 24, 2015.  (Doc. No. 6.)  555 U.S. at 20.  Additionally, modifying the temporary restraining order to include a restriction on Defendants' bank accounts will achieve "PACA's purpose[, which] is 'to ensure payment to the unpaid seller in the perishable agricultural commodities industry.' " Jacobs Silver K Farms, Inc v. Taylor Produce, LLC, No. 4:13-CV-535, 2015 WL 1467258, at *4 (D. Idaho Mar. 30, 2015)

(quoting Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 138 (3rd Cir.2000)). The Court thus orders that the following text be added to the temporary restraining order: "Pending further order of the Court, no banking institution holding funds for any Defendant shall pay, transfer, or permit assignment or withdrawal of any existing PACA trust assets held on behalf of Defendants. Further, pending further order of this Court, no banking institution holding funds for any Defendant shall pay, transfer, or permit assignment or withdrawal of the corporate or personal assets of any Defendants without this Court's express written consent."

II.     Motion for Attorney's Fees

Plaintiff moves that the Court award an additional $2,500 in attorney's fees due to expenses arising from Plaintiff's efforts to enforce the settlement agreement. (Doc. No. 10 at 4; Doc. No. 10-3 ¶ 18.) When the parties conferred at the November 23, 2015, hearing, they agreed to reduce this amount to $1,500. (Doc. No. 13.) The Court grants Plaintiff's motion subject to the agreed reduction. Thus, in addition to the $4,500 that Defendants owe to Plaintiff under the settlement agreement, Defendants now owe an additional $1,500 for a total of $6,000.

III.    Motion to Attach Rental Payments Due to Defendants

Plaintiff also requests that the Court direct to Plaintiff the $7,000 in monthly rent payments that Plaintiff believes are due to Defendants from their tenant David Ruiz. (Doc. No. 10.) Plaintiff's request is akin to a writ of attachment. Federal Rule of Civil Procedure 64(a) states, "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." See also Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc., 970 F.2d 552, 558 (9th Cir. 1992). The rule specifically authorizes federal courts to use state attachment remedies. Fed. R. Civ. P. 64(b). In California, "an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars

($500) exclusive of costs, interest, and attorney's fees." Cal. Civ. Proc. Code § 483.010(a). Additionally, if the defendant is a natural person, the claim must arise from a commercial, rather than personal, transaction. Cal. Civ. Proc. Code § 483.010(c). A court will issue a writ of attachment if it finds all of the following elements to be true. "(1) The claim upon which the attachment is based is one upon which an attachment may be issued. (2) The plaintiff has established the probable validity of the claim upon which the attachment is based. (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based. (4) The amount to be secured by the attachment is greater than zero." Cal. Civ. Proc. Code § 484.090(a).

Plaintiff's claim satisfies the first element because it is a claim for money arising from a commercial contract for the sale of goods, and the amount owed to Plaintiff is the readily ascertainable amount of $6,000. See Cal. Civ. Proc. Code § 483.010. Plaintiff's claim satisfies the second element because, not only has Plaintiff established the probable validity of its claim, but it has filed a signed settlement agreement in which Defendants agree to pay Plaintiff. (Doc. No. 8-1.) The claim satisfies the remaining elements because its purpose is to recover on the claim, and the amount to be secured is greater than zero.

The parties have agreed to a revised payment schedule. (Doc. No. 13.) Pursuant to that agreement, the Court orders that $2,250 of rent payments that would otherwise be due to Defendants be directed to Plaintiff on December 1, 2015, or as soon thereafter as such payments would otherwise be due to Defendants. The Court further orders that $2,250 of rent payments that would otherwise be due to Defendants be directed to Plaintiff on January 1, 2016, or as soon thereafter as such payments would otherwise be due to Defendants. Finally, the Court orders that $1,500 of rent payments that would otherwise be due to Defendants be directed to Plaintiff on February 1, 2016, or as soon thereafter as such payments would otherwise be due to Defendants.

## Conclusion

For the reasons above, the Court grants Plaintiff's motion for attorney's fees and to modify the temporary restraining order. The parties have consented to the continuation of

the temporary restraining order, and it will continue until Defendants have made all payments required under this order.

**IT IS SO ORDERED.**

DATED: November 23, 2015

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT